UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH M. MILLER, | ) | CASE NO. 4:24-CV-00076 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| OHIO DEPARTMENT OF | ) | **MEMORANDUM OPINION** |
| REHABILITATIONS AND | ) | **AND ORDER** |
| CORRECTIONS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

Defendants Lieutenant James Davis ("Lieutenant Davis") and Lieutenant Ronald Pratt ("Lieutenant Pratt") (together, "Defendants" or "Lieutenants Davis and Pratt") move this Court for summary judgment. (Doc. 30.) *Pro se* Plaintiff Joseph Miller ("Plaintiff" or "Miller") does the same. (Doc. 37.) Both motions are opposed. (Docs. 38, 39.) No reply briefs were submitted. For the reasons stated herein, Defendants' Motion for Summary Judgment is GRANTED, and Miller's Motion for Summary Judgment is DENIED.

I.  BACKGROUND

   A.  **Undisputed Facts**

In May 2023, Miller was incarcerated at the Trumbull Correctional Institution ("TCI"). (Doc. 30 at 177.)[1] On May 21, 2023, correction officers recorded Miller exhibiting strange behaviors, including being in his cell naked while inappropriately gesturing, sleeping on his desk

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

which he moved to the center of the cell, and screaming slurs at other inmates. (Doc. 30-5 at 282.) In the morning the next day, Miller broke his toilet while he continued to act erratically. (*Id.* at 285.) After correction officers observed this behavior, officers transferred Miller to the Temporary Protection Unit ("TPU"). (*Id.* at 288.) Medical staff screened Miller prior to entering the TPU. (Doc. 30-2 at 211.) During that examination, he had no physical injuries, but he "appered [sic] to be in an altered state of mind." (*Id.*) Miller reported using Suboxone, methamphetamines, and "tune" (a synthetic cannabis). (*Id.* at 215.)

On May 23, 2023, Lieutenant Davis found Miller in his cell having a mental health crisis. (Doc. 30-4 at 250.) At that time, Miller was naked in his cell with clothing wrapped around his neck, running into and out of the shower in his cell. (*Id.*) Lieutenant Davis feared Miller was a risk to himself and needed emergency medical attention. (*Id.*) To ensure he could get the medication and attention Miller needed, correction officers needed Miller to "cuff-up" so they could safely extract him from his cell. (*Id.*) Lieutenant Davis commanded Miller to come to the door to "cuff-up" so Lieutenant Davis could get Miller medical assistance. (*Id.*) Miller refused all commands and continued to act erratically. (*Id.*) At approximately 8:50 a.m., Lieutenant Davis turned on his body camera which recorded the events of Miller's cell extraction.[2]

To gain his compliance, Lieutenant Davis deployed oleoresin capsicum ("OC") spray. (Doc. 31 at 8:52:55.) Lieutenant Davis deployed OC spray six more times during the recording

---

[2] Lieutenant James' body camera footage recorded the events on May 23, 2023, from approximately 8:50 a.m. through 9:33 a.m. The footage was manually filed with the Court at Doc. 31. Accordingly, the body camera footage will be hereinafter cited as "Doc. 31." Miller complains the disclosure of the footage was untimely. (Doc. 37 at 333-34; Doc. 38 at 308-09.) However, the Court granted multiple extensions to Miller's deadlines to oppose summary judgment or file his own so that he would have sufficient time to review the footage. (Non-Document Order dated 2/13/2025; Non-Document Order dated 3/17/2025.) Thus, he was not prejudiced by any tardy disclosures.

of the incident. (*Id.* at 8:53:50; 8:54:35; 8:54:52; 8:55:31; 8:59:04; 8:59:30.) Lieutenant Davis ultimately deployed a total of 572 grams of OC spray. (Doc. 30-4 at 250.) Still, Miller did not comply and continued to act erratically. (Doc. 31 at 8:53:50-9:04:00.) Because Miller was non-compliant, Lieutenant Davis directed Lieutenant Pratt to deploy a pepper ball system into the cell. (Doc. 30-4 at 264; Doc. 31 at 9:04:27.) After reassessing the situation, Lieutenant Pratt determined Miller was still uncooperative and deployed several more rounds. (Doc. 30-4 at 261; Doc. 31 at 9:04:51, 9:07:20.)

Correction officers then prepared for a physical extraction and assembled an extraction team. (Doc. 31 at 9:11:00-9:22:16.) Prior to the physical extraction, correction officers deployed another round of the pepper ball system. (*Id.* at 9:22:46.) Five correction officers then entered the cell and secured Miller in handcuffs. (*Id.* at 9:23:03.) The officers transferred Miller to a strip out cage. (*Id.* at 9:25:27.) At some point, either immediately prior to or during the extraction, Miller sustained head injuries and can be seen bleeding. (*Id.* at 9:25:59.) A nurse administered emergency medication and physically examined Miller. (*Id.* at 9:25:18.) Correction officers placed Miller in the strip out cage where he remained the duration of the footage, still acting erratically and non-compliant. (*Id.* at 9:26:10-9:33:01.)

After the body camera footage ends, correction officers monitored Miller who was "forcefully" hitting his head on the strip cage causing lacerations to the head. (Doc. 30-4 at 274.) Correction officers deployed OC spray again to prevent Miller from continuing to self-harm and later to retrieve a body-worn camera Miller obtained during his transfer to the stirp out cage. (*Id.*) The attending nurse also gave Miller another shot of emergency medicine. (*Id.* at 255.) Approximately one hour after being put in the strip out cage, correction officers transferred Miller to medical where he was decontaminated. (*Id.* at 264.) Miller was then transferred to an

outside hospital for further treatment. (*Id.* at 274.)

    **B.**    **Procedural History**

On January 11, 2024, Miller filed his complaint. (Doc. 1.) The complaint contained two claims related to excessive force in violation of 42 U.S.C. § 1983: (1) violation of the Eighth Amendment for cruel and unusual punishment; and (2) violation of the Fourteenth Amendment for equal protection under the law. (*Id.* at 3.) Miller asserted these claims against the Ohio Department of Rehabilitation and Correction, Lieutenant James Davis, and Lieutenant Ronald Pratt.[3] (*Id.* at 2-3.) On May 10, 2024, the Court dismissed Plaintiff's complaint against the Ohio Department of Rehabilitation and Correction but allowed the action to proceed against Lieutenants Davis and Pratt. (Doc. 5.)

The case proceeded to discovery. On February 12, 2025, Lieutenants Davis and Pratt jointly moved for summary judgment. (Doc. 30.) On May 5, 2025, Miller moved for summary judgment on his claims. (Doc. 37.) He then opposed Lieutenants Davis's and Pratt's motion on May 14, 2025. (Doc. 38.) On May 23, 2025, Lieutenants Davis and Pratt opposed Miller's motion. (Doc. 39.)

**II.**    **LEGAL STANDARD**

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The moving party bears the burden of showing that no genuine issues of material fact exist." *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021)

---

[3] Miller brought his claims against Lieutenants Davis and Pratt only in their individual capacity.

(citations and quotations omitted). A "material" fact is one that "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[A] genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Abu-Joudeh v. Schneider*, 954 F.3d 842, 849-50 (6th Cir. 2020) (citations and quotations omitted).

"Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." *Queen v. City of Bowling Green, Ky.*, 956 F.3d 893, 898 (6th Cir. 2020) (quotation and citations omitted). On summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir. 2005). A party asserting or disputing a fact must cite evidence in the record or show the record establishes either the absence or the presence of a genuine dispute. *See* Fed. R. Civ. P. 56(c) & (e). Rule 56 further provides "[t]he court need consider only" the materials cited in the parties' briefs. Fed. R. Civ. P. 56(c)(2); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.").

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quotation and citation omitted). The Court's role is not to make credibility determinations or "weigh" conflicting evidence. *Payne v. Novartis Pharms. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014). "The ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should

prevail as a matter of law." *Id.* "This standard of review does not differ when reviewing cross-motions for summary judgment versus a motion filed by only one party." *Hamilton Cnty. Educ. Ass'n v. Hamilton Cnty. Bd. of Educ.*, 822 F.3d 831, 835 (6th Cir. 2016) (citing *U.S. SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013)).

### III. LAW AND ANALYSIS

Lieutenants Davis and Pratt each assert qualified immunity on Miller's Eighth Amendment and Fourteenth Amendment claims. (Doc. 30 at 186.) Not surprisingly, Miller argues they are not so entitled. (*See* Docs. 37, 38.) Miller further argues their conduct violated the Eighth and Fourteenth Amendments as a matter of law. (*See* Docs. 37, 38.) Because the parties contest whether there was a constitutional violation, and that determination is potentially dispositive in the qualified immunity context, qualified immunity will be addressed first.

"The doctrine of qualified immunity provides that 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 738 (6th Cir. 2022) (quoting *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021)). When there is more than one individual defendant in a case, "[e]ach defendant's liability must be assessed individually based on his [or her] own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). Once asserted by a defendant, a "[p]laintiff bears the burden of showing that defendants are not entitled to qualified immunity." *Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018) (citing *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)); *Palma v. Johns*, 27 F.4th 419, 427 (6th Cir. 2022). The plaintiff must demonstrate both the challenged conduct violated a constitutional right and the right was clearly established. *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir.

2014).  "If the plaintiff fails to establish either element, the defendant is immune from suit." *Id; see also Barber v. Miller*, 809 F.3d 840, 844 (6th Cir. 2015) ("Once a defendant invokes qualified immunity, the plaintiff bears the burden of showing that (1) the defendant's acts violated a constitutional right and (2) the right at issue was clearly established at the time of the defendant's alleged misconduct.").

      A.      **Eighth Amendment**

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The ban on "cruel and unusual" punishment applies to "harms that prison officials inflict on convicted prisoners during their terms of incarceration." *Johnson v. Sootsman*, 79 F.4th 608, 615 (6th Cir. 2023). In this setting, "the ban on cruel and unusual punishments prohibits the 'unnecessary and wanton infliction of pain' on prisoners." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 6, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). The inquiry into whether a prisoner is subjected to "unnecessary and wanton infliction of pain" contains both "objective and subjective components[.]" *Id.* (citing *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021)). "Objectively, harm to a prisoner must rise to a sufficiently serious level because the Eighth Amendment prohibits only 'cruel and unusual' deprivations, not just uncomfortable or 'even harsh' ones." *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 345-47, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). "Subjectively, harm to a prisoner must result from a prison official's sufficiently volitional actions because the Eighth Amendment bars only willful conduct that 'inflict[s]' 'punishment,' not accidental conduct that causes injury." *Id.* (quoting *Phillips*, 14 F.4th at 534).

In the "use-of-force context," as is the case here, "the Supreme Court has applied a more

demanding subjective test but a more relaxed objective test." *Id.* at 615-16 (citing *Hudson*, 503 U.S. 5-7).  Subjectively, a prisoner who challenges an officer's use-of-force must prove more than "deliberate indifference," and instead, the "core judicial inquiry" in the use-of-force context is "distinguishing between force used in a 'good-faith effort to maintain or restore discipline' and force used 'maliciously and sadistically to cause harm.'"  *Id.* at 616 (first citing *Hudson*, 503 U.S. at 5-6 then quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010)).  Only that force which is "exerted maliciously and sadistically to inflict pain" violates the Eighth Amendment.  *Id.* (citing *Hudson*, 503 U.S. at 5-7).  Objectively, a prisoner who challenges an officer's use of force "need not prove 'extreme' or 'serious'" harms.  *Id.* (quoting *Hudson*, 503 U.S. at 9).  The objective inquiry depends on "our 'contemporary standards of decency,'" which is violated by the "malicious and sadistic infliction of pain" "whether or not the pain leads to any significant injury."  *Id.* (quoting *Hudson*, 503 U.S. at 8-9).

### 1. Subjective Element

To succeed on his Eighth Amendment claim, Miller must prove the correction officers "used the force 'maliciously and sadistically' to inflict pain."  *Id.* at 618.  The Sixth Circuit has identified four factors district courts should consider to decide whether a jury could find an officer acted with the requisite malicious intent: (a) the extent of the prisoner's injury; (b) the nature of the threat that justified the use of force; (c) whether the amount of force was proportional to the threat; and (d) whether the officer took any actions designed to reduce the required amount of force.  *Id.* (citing *Hudson*, 503 U.S. at 7).  In conducting this inquiry, the Sixth Circuit has recognized that "while judges may review an encounter by slowing down, pausing, and replaying a video, officers have no such luxury."  *Id.*  Officers often face "quick decisions in the heat of the moment" and so courts should "defer to their decisions and avoid

'unreasonable *post hoc* judicial second-guessing' of their conduct." *Id.* (quoting *Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008)).

**Extent of Miller's Injuries.**  While Miller need not prove a "serious injury," the "'absence' of such an injury goes a long way to disprove any claim that an officer used force with the required intent to harm." *Id.* at 619.  Here, Miller suffered injuries relating to the use of OC spray, the deployment of the pepper balls, and lacerations to the head. (Doc. 37 at 310; Doc. 30 at 184; Doc. 30-2 at 202.)  Defendants assert Miller caused the lacerations to his head by banging his head against the strip cage. (Doc. 30 at 184.)  Miller does not dispute this fact. (Doc. 37 at 324-25.)  The body camera footage does show Miller suffered at least some type of laceration during the physical cell extraction because blood can be seen on Miller's head. (Doc. 31 at 9:25:59.)  Regardless, the injuries Miller sustained by Lieutenant Davis and Pratt only relate to the use of OC spray and the pepper ball system.  And while perhaps significant to Miller, these were not overall "serious" injuries in considering other injuries courts have examined.  *See, e.g.*, *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (the use of OC spray "merely was uncomfortable in the ordinary fashion of persons exposed to pepper spray" and was not a significant injury).  At most, the injuries inflicted by Lieutenant Davis and Pratt were minor and not long-lasting.

Miller also identifies the use of a "battery [sic] ram" as a source of excessive force. (Doc. 37 at 311.)  However, Miller does not further develop why the use of the battering ram was excessive, nor does he identify any injuries he suffered.  Correction officers used a pole to push Miller away from the cell door when he was being non-compliant so they could use the pepper ball system. (Doc. 31 at 9:05:21.)  The single use of this pole, and the lack of any injuries, weighs against finding the use of force maliciously and sadistically inflicted pain.

**Nature of the Threat.**  This factor considers whether an officer has a "plausible basis" to believe the inmate posed a threat which needed to be subdued.  *Johnson*, 79 F.4th at 619.  The threat posed in this case was a risk of self-harm.  When Lieutenant Davis first approached Miller in the morning of May 23, 2023, he immediately identified Miller as posing a risk to himself due to his erratic behavior.  (Doc. 30-4 at 250.)  Both Lieutenant Davis and Pratt knew Miller was already suffering from a mental health crisis since being transferred to the TPU on May 22, 2023.  (Doc. 30-5 at 282-88.)  For these reasons, Lieutenant Davis decided it was necessary to extract Miller for his own safety.  (Doc. 30-4 at 247.)  Because Miller was not responding to commands, both Lieutenants Davis and Pratt believed it was necessary to reach Miller to prevent self-harm and the use of OC spray and pepper balls were deployed to gain Miller's compliance.  These facts would not "permit a reasonable jury to draw the . . . inference that [Defendants] used force for no other reason than to inflict pain or injure [Plaintiff]."  *Johnson*, 79 F.4th at 620; *Erickson v. Gogebic Cnty.*, 133 F.4th 703, 708 (6th Cir. 2025) (finding nature of threat did not support use of force because inmate was compliant, handcuffed, and no longer acting aggressively).

**Proportional Force.**  This factor considers whether Defendants "used an amount of force proportional 'to the need for forcibly bringing [Miller] under control.'"  *Johnson*, 79 F.4th at 620 (quoting *Lockett*, 526 F.3d at 876).  The Sixth Circuit has "repeatedly described the use of a taser or pepper spray as a proportional level of force in response to a prisoner's refusal to follow orders, including an order to accompany an officer."  *Id.* (collecting cases).  Here, Lieutenant Davis used OC spray in an attempt to gain Miller's compliance.  Lieutenant Pratt used the pepper ball system for the same reason.  And both were done to physically extract Miller to ensure he did not self-harm.  The use of OC spray, pepper balls, and the physical extraction was not

disproportional to the threat Miller posed to himself. *See Jennings*, 93 F. App'x at 725 (finding plaintiff repeatedly failed to obey orders and the use of OC spray "was applied in a good-faith effort to maintain or restore discipline," not to maliciously cause pain); *Jennings v. Peiffer*, 110 F. App'x 643, 646 (6th Cir. 2004) ("officers did not act maliciously or sadistically in spraying a chemical agent to secure [plaintiff's] compliance").

Miller takes issue with the amount of OC spray used and pepper balls deployed. (Doc. 37 at 311; Doc. 38 at 334.) To Miller, Lieutenants Davis and Pratt used an excessive amount of spray. True, the use of pepper spray in greater quantities than necessary or used solely to inflict punishment may constitute excessive force. *See Lawrence v. Thompson*, No. 14-cv-P919, 2016 WL 3406158, 2016 U.S. Dist. LEXIS 78978, at *14 (W.D. Ky. June 17, 2016). For instance, Miller relies on *McKinnon v. Redden* in support of his argument the amount of pepper spray was excessive. No. 21-cv-573, 2024 WL 5154274, 2024 U.S. Dist. LEXIS 228696, at *6-8 (N.D. Ind. Dec. 17, 2024). In *McKinnon*, officers allegedly used OC spray "for over an hour until he passed out" and then placed the inmate in a hot shower while handcuffed and clothed. *Id.* at *9. And in *Green v. Poorman*, also relied on by Miller, the officer ordered another to pepper spray plaintiff while handcuffed in the back of a patrol car. No. 20-85, 2022 WL 608965, 2022 U.S. Dist. LEXIS 29309, at *2-3 (D. Del. Feb. 17, 2022).

In contrast, here, Defendants deployed a series of OC sprays lasting just over ten minutes. Lieutenant Davis and Pratt assessed that Miller was suffering from a mental health crisis and intervention was necessary immediately to prevent self-harm. Since Miller refused to comply, Lieutenant Davis deployed OC spray, reassessed, and used more OC spray. Then, when Lieutenant Pratt escalated to the pepper ball system, he reassessed after each use. The deployment of OC spray, though in some quantity here, does not amount to greater than

necessary given the circumstances of the evolving situation to raise the inference the OC spray was used in a malicious manner. Instead, its use met the threat posed similar to those cases in which the Sixth Circuit has "repeatedly" upheld as lawful. *See, e.g.*, *Jennings*, 110 F. App'x at 644-46 (corrections officers sprayed chemical agents on inmate who refused to remove shoes as ordered); *Jennings*, 93 F. App'x at 724-25 (corrections officers used pepper spray on inmate who refused to leave shower); *Davis v. Agosto*, 89 F. App'x 523, 526 (6th Cir. 2004) (corrections officers used mace on inmate who refused to present his hands so that he could be handcuffed); *Siggers v. Renner*, 37 F. App'x 138, 140 (6th Cir. 2002) (corrections officers used pepper spray on inmate who refused to leave strip cage). In sum, Lieutenant Davis's actions were not disproportional to the threat posed, and neither were Lieutenant Pratt's.

**De-escalation.** The last factor considers "the 'efforts made to temper the severity of a forceful response.'" *Erickson*, 133 F.4th at 709 (quoting *Whitley v. Albers*, 475 U.S. 312, 321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). Here, correction officers first tried to talk with Miller. After he refused, Lieutenants Davis and Pratt believed it necessary to escalate their actions to gain control of Miller. After each use of OC spray, Lieutenant Davis reassessed whether Miller would comply. (Doc. 31 at 8:53:50; 8:54:35; 8:54:52; 8:55:31; 8:59:04; 8:59:30.) The same is true of Lieutenant Pratt's use of the pepper ball system. (Doc. 30-4 at 264; Doc. 31 at 9:04:27.) After Miller continued to act erratically, they believed a physical cell extraction was necessary to administer emergency medication. They then placed Miller in a strip cage. During the course of this interaction, attempts to gain compliance without force were met with refusals or resistance. (Doc. 31 at 9:28:00-9:29:30; Doc. 30-4 at 273-74.) This is not a case in which "'de-escalation techniques' could have eliminated any need for [] force." *Erickson*, 133 F.4th at 709. Nor is it a case in which the Defendants' "actions arose from a sadistic intent to inflict pain." *Johnson*, 79

F.4th at 620.

For his part, Miller does not identify evidence, even when viewed in a light most favorable to him, that would allow a reasonable jury to find Lieutenants Davis or Pratt harbored an intent to inflict pain.  For instance, Miller explains that he was acting erratically on May 23 because on May 22, 2023, Lieutenant Davis pumped OC spray in the water supply running to Miller's room.  (Doc. 37 at 313-15.)  When Lieutenant Davis came to Miller's door in the morning of May 23, that is why he acted erratically.  (*Id.*)  However, these events are not recorded anywhere and only come from Miller's statements in this motion for summary judgment and opposition to Defendants' motion.  Statements made in motions without support are not sufficient to create a genuine issue of material fact to survive summary judgment.  *See* Fed. R. Civ. P. 56(c) & (e).

Accordingly, there is no genuine issue of material fact that either Lieutenant Davis or Lieutenant Pratt used force "maliciously and sadistically" to cause Miller harm.

### 2. Objective Element

To satisfy the objective element of an excessive use-of-force claim, a plaintiff need not show a "significant injury," but must show the defendant "used more than '*de minimis*' force[.]" *Johnson*, 79 F.4th at 616.  Miller claims his injuries relate to the use of OC spray, the pepper ball system, and lacerations to his head.  But the use of OC spray, under the circumstances presented here, is not a sufficiently significant injury.  *See Pullen v. Tabor*, No. 20-cv-50, 2024 WL 3821927, 2024 WL U.S. Dist. LEXIS 143758, at *31 (S.D. Ohio Aug. 13, 2024) (finding use of OC spray a *de minimis* injury even though "OC spray is certainly unpleasant" because it is not "inherently repugnant"); *McDougald v. Eaches*, No. 18-cv-80, 2019 WL 5188369, 2019 U.S. Dist. LEXIS 177941, at *12-13 (S.D. Ohio Oct. 15, 2019) (finding objective element not met

because though plaintiff suffered some discomfort from OC spray, it was not a permanent or other type of serious injury). The Sixth Circuit has found the use of OC spray in some circumstances satisfies the objective element, but no such circumstances are present here. *See Roberston v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (finding constitutional violation when OC spray was used on a sleeping inmate). Further, neither Lieutenant Davis nor Lieutenant Pratt caused Miller's head injuries—those were caused by Miller himself. (Doc. 30-4 at 274.) There is no record evidence to support that the use of force was greater than *de minimus*.

Neither Lieutenant Davis nor Lieutenant Pratt committed a constitutional violation. Both are entitled to qualified immunity.

> **B.** **Eighth Amendment Deliberate Indifference Claim**

Though not entirely clear, Miller appears to argue correction officers should have prevented him from further self-harm once he was restrained in the strip out cage. (Doc. 37 at 325.) This argument appears to assert a deliberate indifference claim, in addition to his excessive force claims. The Sixth Circuit has explained:

> As compared to the use-of-force claim, this medical-needs claim has a more demanding objective element and a less demanding subjective one. Objectively, inmates must establish that they had serious medical needs. This standard requires them to show either that a doctor has diagnosed them with a condition requiring treatment or that they suffer from a condition that any layperson would recognize requires treatment. Subjectively, inmates must establish that an officer acted with deliberate indifference to their serious medical needs. This standard requires them to show that an officer subjectively knew of (and consciously disregarded) the serious medical needs.

*Erikson*, 133 F.4th at 711-12 (citations and quotations omitted).

Here, the record does not support Miller's claim that either Lieutenant Davis or Pratt were deliberately indifferent to his serious medical needs. A nurse was present throughout the encounter, administered emergency medication, and Miller was subsequently transferred to a

hospital for examination and further treatment after the medication began working.  His claim that he should have been restrained better does not state a deliberate indifference claim.

C.     **Fourteenth Amendment**

The Equal Protection Clause of the Fourteenth Amendment provides "[n]o state shall . . . deny to any person . . . the equal protection of the laws."  U.S. Const. amend. XIV.  A plaintiff may bring an Equal Protection claim under a class-of-one theory, as Miller seemingly does so here.  Under a class-of-one theory, a plaintiff must show "the state treated the plaintiff differently from others similarly situated and that there is no rational basis for such difference in treatment." *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005).  To prove the second element, a plaintiff must either negate every conceivable basis which might support the government action or demonstrate the alleged action was motivated by animus or ill-will.  *Id.* at 711.

Miller's Fourteenth Amendment claim appears to relate to correction officers not decontaminating him from the OC spray and pepper ball system in a reasonable time.  (Doc. 38 at 343.)  That is, Miller claims his decontamination was either delayed or altogether skipped while other inmates were decontaminated expeditiously.  (*Id.*)  Miller has not submitted any evidence to support his assertion other inmates were decontaminated in a time or method different from his own.  (*Id.*)  Instead, Miller only asserts his own statements that his decontamination was improper.  (*Id.* at 343-44.)  Yet statements alone in motions for summary judgment are not enough.  *See* Fed. R. Civ. P. 56(c) & (e).  Without evidence Miller was treated differently from others who were similarly situated, he cannot maintain his Fourteenth Amendment claim.

D.     **Miller's Motion for Summary Judgment**

Having determined that Defendants Davis and Pratt are entitled to qualified immunity,

and having determined that Plaintiff has not presented evidence to submit to a jury with respect to his Deliberate Indifference and Fourteenth Amendment claims, Miller's Motion for Summary Judgment is denied.

## IV. CONCLUSION

For the reasons stated herein, Defendant Lieutenant Davis' and Lieutenant Pratt's Motion for Summary Judgment (Doc. 30) is GRANTED, and judgment is entered in their favor. Plaintiff Joseph Miller's Motion for Summary Judgment (Doc. 37) is DENIED.

**IT IS SO ORDERED.**

Date:  August 14, 2025

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE